Our third and final case on the call of the docket today is Agenda Number 13, Case Number 112-566, Chicago Teachers Union, Plaintiff Appellee v. Board of Education of the City of Chicago, Defendant's Appellee's Counsel for the Defendant's Appellants. Thank you. My name is Sally Scott, and with my colleague Abeza Zanzi, we represent the Defendant Appellants in this case, the Board of Education of the City of Chicago, and the individual named defendants. This case is in an unusual posture because it is before the Court, pursuant to Supreme Court Rule 20, as this Court agreed to answer questions certified to it from the Seventh Circuit Court of Appeals. The certified questions address the interpretation of two sections of the Illinois school code as they apply to laid-off tenured teachers within the Chicago public school system. The questions ask whether the sections of the school code, either separately or together, give laid-off tenured teachers a right to be rehired after a reduction in force, or a right to certain procedures during the rehiring process. The answer to both questions is no. Now, over the last two decades, the Chicago public school system has undergone dramatic legislative changes by the Illinois General Assembly designed to fundamentally change how the school operates. And this process began in the 1980s. There was a grassroots movement to change the Chicago school system. Communities were fed up with the conditions in the local public schools and wanted change. The primary focus of the reforms was to shift from centralized bureaucracies to school-based governance. And the balance of power shifted from the Board of Education and labor unions to the local school through their local school councils and authority given to the principals. And this was codified in Article 34 of the school code, and Article 34 is specific to Chicago public schools. And there it states that the General Assembly intends to make the individual local school the essential unit for educational governance and improvement. And the General Assembly placed primary responsibility for school improvement in the hands of the parents, the community, the teachers, and the school principals at the school level. Again, in 1995, the General Assembly amended the school code to continue and to strengthen those reform initiatives. A key component of the 1995 reform was to give principals more control over their personnel and the latitude that they needed in hiring decisions. And it's that pillar of school reform that is at issue today. Did these reforms come before Powell v. Jones? They came after Powell v. Jones. And how is that decision affected? Does it require that if you provide for a layoff, you must also provide for recall? Powell v. Jones applied to certified employees of, I believe it was the state, it was not public school employees. Under the Civil Service Commission rules, which applied to those employees, they had a specific right to layoff and they had a right to recall. That was set by the Civil Service Commission personnel rules. Those Civil Service Commission rules were also actually eliminated as part of the reform legislation. Those rules did not apply to teachers. So it's a different group of employees under a different statutory framework that does not apply to the post-reform legislation era. And specifically... In the history that led to the reforms, there's actually a dialogue saying that the certified employees were losing their due process rights in a reduction in force. But yes, I believe that distinguishes Powell v. Jones. Doesn't Section 34 refer to layoffs of employees and their recall in a conjunctive rather than a single action? Section 34, 1831 does, and it... Where it gives the board the authority. That provision is an enabling statute, and so it gives the board the authority, if it wants, to establish procedures governing the layoff or reduction in force and the recall of such employees. But it's an enabling statute. It does not mandate that they provide recall rules. It then goes on to say that they can establish criteria for layoffs, reductions in force, or recall rights. And there we have the disjunctive. But that provision, importantly, applies to all CPS employees. So it applies to janitors, custodial employees, food service workers, office employees, anyone in the business office. It's CPS wide. It is not specific to teachers, and it is not specific to tenured teachers. So that, however this court interprets this provision, will affect all of CPS. In contrast, Section 34, 84 specifically addresses tenure, and it addresses what rights tenured teachers have. And that provision describes how teachers are appointed, how tenure is attained, states that their appointments are permanent, subject to removal for cause, as it's set forth in the next section, 34, 85. It is completely silent, however, on layoff and recall. What it does say, though, is that if there are vacancies, that the principal makes the decision to fill new and vacant teaching positions. Consistent with Section 34, 8.1. 8.1, in turn, states that positions are to be filled based on a candidate's skill and ability in that particular position, without regard to seniority or length of service. Now, the legislative history on that section, and the amendment to Section 34, 84, is instrumental in answering the question certified by the Seventh Circuit, which is whether tenured teachers have a right to be rehired after an economic layoff. Prior to 1995, Section 34, 84 addressed layoff and recall, and it had very specific provisions in it. Tenured teachers whose positions were eliminated for reasons other than cause remained on the payroll for 25 months. They had entitlements to interim teaching positions and vacant positions. The school code required that the board and the CTU had to bargain procedures for the teachers to apply for vacancies. All of that changed in 1995, when the General Assembly eliminated all those references to reserved teachers. They've also been referred to as supernumeraries, if you're familiar with that term. All of those provisions were eliminated, and instead, the General Assembly replaced that provision with the statement that teachers were entitled to, and that new positions and vacant positions are filled according to 8.1, which is merit and ability. It's not seniority. It's not length of service. Could you address the land decision that's certainly discussed, just as you were describing here, the amendments where prior to 1995, limitations on the power to layoff were, as you say, part of Section 34, 84. And then, as this court said, the 1995 amendments did not eliminate or reduce the power to layoff, but instead, by deleting the layout provision from Section 34, 84 and adding Section 34-1831, the legislature gave the board the authority to formulate and implement its own rules and procedures regarding layoffs, rather than binding the board to a legislative mandated procedure. Certainly, can you help me understand this language of this court in interpreting this? The language seems to suggest that the purpose behind the shifting of this language from 34-84 was not to completely delete the principles that had been there earlier, but rather to allow the board to be more creative in its rules and regulations and not be so numerous and all of that kind of thing. Well, and I agree with what the court said there and how you read it. The intent of the legislative changes was to eliminate the mandatory procedures that were in place and to give the board the authority, if they were going to conduct a layoff, to establish their own procedures. Now, what the court noted in land was that the procedure the board established was layoffs were by seniority. And that was how the layoffs were done in land. And this court found the board had the right to establish their own procedures in a layoff context. I believe the same principle exactly applies here. The board has the right to decide whether or not there's going to be a recall. If they have a recall, 34-1831 sets forth criteria that they look at and they can apply as they deem appropriate. They get to select the criteria that are listed in the criteria they deem appropriate. They get to give the weight to that criteria. But again, it's enabling. So if they choose to have recall, they have the authority then to set the criteria for that recall as opposed to pre-reform where they did not have the ability, it was mandated what had to occur, both in terms of layoff, whether or not there were recall rights and the procedures to be followed. So at least you agree that the board has the authority to provide for recall, despite the sections that you were describing to us moments ago about the authority of principles in terms of hiring. If they choose to have a recall, I believe they have the authority to do so. But that authority cannot negate or vitiate 8.1 with a principal's right to choose or select the staff for their school. So those two provisions would have to, any recall rights would have to be consistent with 8.1 as well. Are you saying that a principal on his or her own initiative may make a decision to employ someone and not take that employment recommendation to the board for board approval? No, the board is the statutory employer. There's no question about that. So I'm trying to follow the distinction in response to Justice Tice's question. Yeah, and in 8.1 it says that the board has the authority to employ, but 8.1 also says that the principal makes the appointment and selects the individuals for the school consistent with the minimum requirements the board has established, and then the board approves that appointment. Well, the board could choose not to approve. Isn't that true? As it's stated in 8.1, if the individual selected meets whatever minimum criteria the board has established pursuant to 8.1, the board approves that appointment. So it's just, you're saying a formality only? It is primarily a formality. That's correct. Well, and it may be in the real world, but are you saying that's what the law requires, just a rubber stamp? Again, the board sets minimum criteria. So, for example, that if you're going to hire a middle school teacher, the middle school teacher must be certified in the subject that they're teaching. Minimal criteria like that. If that teacher meets that minimum criteria, then yes, I believe the board does approve that appointment statutorily. To follow through with that, in the land case, later in the land case, there's this discussion about whether or not the board can delegate its authority. The authority that we just were talking about here under whatever it is, 1831, the board has the authority to provide policies for layoff and recall. But then doesn't the land case go on to say that it is clear the board is prohibited from delegating the authority to the teacher? In some schools, yes. It could delegate it to others. It could delegate it to the superintendent. But the board itself had to act on the layoff of the teachers. That's correct. Just as the board has to affirmatively employ the teacher, but it's still the principal who makes the recommendation on appointment for the teacher. Similarly, the principal can make recommendations on the layoff, but only the board as the statutory employer has the actual authority to layoff. And in 8.1, the legislature gave the principals more authority on selecting candidates for hiring in terms of what it set forth for the criteria than it did on layoffs. Does the discharge for cause provisions, they still exist in the statute, right? The discharge for cause provision does still exist in the statute. That's correct. Okay. So let me ask you this. Despite all these amendments and so forth, if we accept your argument, are we in effect saying, or not we, but the argument you're making is saying, you know, you still can't discharge unless you prove cause, but you can lay somebody off without cause and without ever finding cause. And so you can, in effect, accomplish through a layoff what you can't accomplish through a discharge. Does that question make sense? The question did make sense. The Supreme Court, both in Powell v. Jones and in the Land case, have distinguished between discharges for cause and layoffs. A discharge for cause suggests some level of misconduct, lack of performance or malfeasance. The protections for 10 years teachers remain with a discharge for cause. The layoff provision assumes... Here's my question. The point is, the status for the teacher is the same. They're out on the street. They're not in the classroom. Right? If you're discharged, you're out of the classroom. If you're laid off, you're out of the classroom. You're on the street, so to speak. Correct. So getting back into the classroom, whether it's through a grievance arbitration procedure on a discharge challenge, or coming back because there's now more economic need, or is this really just a subterfuge that, you know, we could lay everybody off tomorrow and then tomorrow bring them selectively back and never discharge one person? Well, it's not a... It references a good faith layoff. The basis of the layoff in this case has not been challenged, that it was for economic necessity. It was not a disguise for terminating teachers for cause. So there is a distinction. I would also say that is the outcome of what the General Assembly did. The General Assembly retained the protections for 10-year teachers with cause dismissals, removed the provisions on layoff and recall, and replaced it with a statement. That was the intent of the General Assembly. Again, going back to the fundamental premise that the principal is responsible for what happens in his or her school, and they have to have the ability to select their staff, because they are accountable now for their school results. So the bottom line is, teachers, 10-year teachers are protected from discharge from classrooms, and they're not discharged from the school for cause, but they're not protected if they're laid off. They do not have a right to be rehired if they are laid off, that's correct, because of how the statute now refers to how new positions and vacancies are filled. Now, there is, and I refer to this in my brief, Section 4.5 of the Illinois Educational Labor Relations Act states that teachers can implement a layoff without having to bargain it, but the impact of that decision does need to be bargained if the union requests it. The impact includes any sort of recall or rehiring rights. So it is certainly possible that the union can go to the board and request to bargain over the impact of the layoff. That did not happen in this case, so there was no right, but rights could be negotiated in that way, again, as long as those rights are consistent with 8.1, which cannot be vitiated. Back to Chief Justice Kilbride's question and Justice Garmon's question. As I understand what you're saying today, though, if the layoff was pretextual or tantamount to what amounted to a bad faith type of effort to discharge where they thought they had cause and didn't want to go through the procedures for cause, it would be your position then there would be a viable action by the tenured teachers to show there wasn't a good faith effort? I mean, something like a retaliatory discharge type of claim? Correct. Correct. That option would be available to them, whether it be some sort of, you know, First Amendment constitutional free speech claim retaliation, a violation of the grievance process, there would be recourse for that if it was a subterfuge layoff. And there's no dispute that there is no issue relating to that in this case? Correct. I see my light is on, so I'll look for further questions. Thank you, counsel. Counsel for the appellee. Good morning. I please the Court. I'm Tom Gagin. I'm here for the plaintiff appellee. I'd like to go directly to what I think is the heart of the Board's argument, which is that there's a right of principal selection that trumps the Board's authority to have a recall list. The Board relies on the sentence in Section 84, very bottom of 84, that says the school principal shall make the decisions in selecting teachers to fill new and vacant positions consistent with Section 34.8.1. That was added in 1995 when Section 8.1 itself was changed. That sentence doesn't say principals can hire. It says select. And it says select consistent with 8.1. What does 8.1 say? 8.1 says that the right to employ, discharge, or layoff shall be vested solely with the Board. The principal shall fill positions by appointment and may make recommendations regarding the employment, discharge, or layoff of any individual. We're on all fours in complete agreement with this Court's 2002 land decision and the statement in the land decision in particular that the principal's role under 1831, where the principal is not even mentioned, is to fill positions by appointment. As I mentioned, the principal's role in 1831 is entirely advisory. 8.1 does say that appointments are made by the principal, but if you look at the fifth paragraph in that 8.1 where that language appears and read the whole quote, it says made by the principal in accordance with procedures established by the principal. Procedures established and provided by the Board. Procedures that could be under 1831. Procedures under which the principal has no role whatsoever. So it's easy and it's actually desirable to give effect to both these provisions. Principals can select from a recall list established and provided by the Board. Why do we know that that was going on here? Because that's what was going on under the old 84. It wasn't just by rote seniority. I mean, the principal has some selection prerogative, but it's under procedures established by the Board. It's selection from a recall list. The Board sends over three. The principal may pick one or other. The teacher doesn't necessarily want to go to these schools. There's usually some sort of mutual consent. It's worked out in that way. But that doesn't negate 1831. And it's a fairly strange notion that one sentence in Section 84 that the principals have the right to select negates the Board's power under 1831. It doesn't make any sense. So if you look at the new 2412, which was just passed by the legislature, it's a recall procedure for outside Chicago. That's pretty much what is going on here. They have rankings of teachers by recall, but the principal is going to have some power to select which particular teacher comes along. Land, in our view, settled conclusively the argument that the Board is making in this case. Land says that hiring is vested solely with the Board. Why does Land say that? Because Section 8.1 says that. The right to employ, discharge, or layoff shall be vested solely with the Board. This Court gave great emphasis to that in the Land decision. What is going on in this case, what is at the heart of this case, is that the Board just refuses to implement 1831. It refuses to have true layoffs instead of firings. It's refusing to use the detailed mandatory. These are mandatory criteria for filling vacancies that were set out with great detail by the legislature in 1831. Judge Corr in the United States District Court decision said, you know, this is a pretty elaborate statute. You just can't walk away from this. The Board says it can walk away from it. Why? Because it says it's an enabling statute. Oh, it's an enabling statute. Well, the Board's authority to conduct any kind of layoff at all requires it to invoke 1831. That's what this Court said in Land. Otherwise, it wouldn't have the authority to conduct the layoff. 1831 is an enabling statute, but it requires the Board to have rules for both layoff and recall. For both the layoff of employees or reduction in force of employees and the recall of such employees. Now, it's true that when it gets to the criteria, the language goes into the disjunctive, but that could also be read in the conjunctive, and it would be illogical if the Board had to have rules for layoff and recall, but the criteria, which are supposed to be mandatory, were optional. That OR only modifies criteria that should be used in the process. The obligation is to have layoff and recall. And why? Because these teachers have permanent appointments. I think the Board argued that the Board had the power, but not the duty. I think that would be the essential part. How do you respond to that? The response is, first, the literal language of Section 1831 is that to conduct a layoff, the Board first has to put into place rules for both layoff or reduction in force of employees and the recall of such employees. It's both and. But the second, and perhaps maybe the more important argument, is that the Board, or that the statute, uses the terminology layoff and discharge differently. So, for example, go back to 8.1, which the Court focused on in land. It says the Board has the power to hire, fire, or layoff, hire, pardon me, discharge or layoff. Discharge and layoff are different. And if they weren't different, if layoff could be a discharge, then assuming that the employee has some tenure right, and you can't have a stronger tenure right than permanent appointment, Powell says that if there's a tenure right, a discharge, a layoff that is a discharge, would require a due process hearing. So in Powell, which is absolutely on point here, in Powell, the Court said that given the recall rules that existed under Section 8 of the Civil Service Code, which the District Court in this case said closely resembled 1831, given the recall rules that existed there, the Court, this Court, would not require a due process hearing because the employee had a chance to continue employment. So there wasn't a complete cessation. Layoff was different from discharge. And land, pardon me, Powell, just focuses a great deal on this point. It says that the qualitative differences between, if I may, Powell says that the, in our judgment, this is Powell at 56 ill second 81, in our judgment, the qualitative difference between layoff and discharge are such that variances in procedure are constitutionally permissible. We don't need to require a due process hearing because there's not a complete cessation of employment. If you interpret Section 1831 to give the Board the power to, layoff, i.e., discharge teachers with permanent appointments, this Court's decision in Powell would require a due process hearing. You don't want to go there. So the logical way of interpreting 1831, which does use the word layoff and not discharge, which is used elsewhere in the statute, it's used in Section 84, it's used in Section 85, it's not used in Section 1831, it's used in Section 8.1, it's not used in Section 1831. The logical way of reading it is not just the literal way, and not just the way that the internal logic of the school code requires, but it's the way that Powell found an implied or existing right to recall to avoid the constitutional problem of turning the layoff of an employee who has more than tenure in Powell was just the road crew. They weren't just highway workers. Counsel, your argument then is not hinged on the plain reading of the statute. It is based on the plain reading of the statute because it's both end. Okay. Well, then let me ask you so you can address the argument of the Board here. You did mention the enabling nature of the statute as they present it. Where in 1831 specifically does it create a substantive right to recall for laid-off tenured teachers? In order to conduct a layoff, the Board's power over to conduct a layoff, and I'm going back to the decision in layoff. I understand that. I just want to know where in the language of the statute is that accomplished. It's accomplished in the fact that they removed the recall and layoff procedure from Section 84, which gave the teachers a permanent appointment. And in 1831, they specifically, and this is just plain language, say that the Board has the power to establish rules providing for layoff or reduction in force of employees and recall of such employees. It's both end. But terminologically, if the code is using the word layoff and not discharge, which it uses in another context, there is also that additional internal logic. Is there, I think counsel would argue, and you're not going to have a chance to get up here again. Okay. So I want to hear your, I think, and I don't want to put words in the mouth of counsel, but as I understand the argument, I think they would say the right of process is a far cry from the right to be hired. There isn't a right to be hired. This is a right to be recalled. We disagree with the formulation of the Seventh Circuit's question. If you have a recall right, you continue as an employee. That doesn't guarantee you're going to be recalled, and the Board has flexibility in setting up the recall procedure. But there has to be a recall procedure. Let me put it this way. Under Section 84, the permanent appointment implies a right to be recalled, certainly over new hires off the street, which is what is going on in this case. They're hiring hundreds of new hires, filling vacancies like we put out in Exhibit L of our appendix here. There are 35 pages of vacant positions. They're going to new hires off the street. Not to these teachers, most of whom have superior and excellent evaluations and are highly qualified for these positions. So under Section 84, there is an implied right for an employee with a permanent appointment to be considered for this in preference to new hires. Under 1831, there is a substantive right to recall under 1831 until the recall procedure is exhausted in preference to new hires. Last question, because I really do want to hear your position on this. Why isn't, as opposing counsel would state, a better reading of 1831 is not that it grants teachers a right to a process, but rather it grants to the board the power to establish a recall process if it so chooses, namely make it an enabling statute? The board does not have that option if it invokes 1831. It has to follow the terms of the grant. It has to do it the way 1831 says. And 1831 says you have to have in place rules for layoff or reduction in force of employees and recall of such employees, and it has mandatory criteria. You know, the legislature is clearly concerned to have merit-based selection. If there's going to be a reduction in force, let's have the best possible teaching complement that exists, even if it's smaller. So there are all these criteria that have to be considered. The board is considering none of those, and it's bringing in new hires off the street. This is not just a legal interpretation, Your Honor. This is a huge disservice to the children of Chicago. These are new teachers who are filling these 35 pages of vacancies who have never been in a classroom. They've never taught. We don't know if they're going to control a class. The board's own agency, the Consortium for School Research, says that the majority of them wash out after four years. Those people are being put in right now in preference to people who have excellent and superior evaluations. That's a travesty, and that is why we're here. And also the opposite of what counsel said. She mentioned the economics, but she also mentioned the clamoring of people and changes in the system. So is that a factual matter? The legislative history is misstated by the board. In 1988, there was an impulse for decentralization. In 1995, the legislature put in this language, the right to hire a fire is exclusively in the board. The Daley administration switched focus. It went from decentralization to the local school councils to centralization of the board. Thus, the era of Arne Duncan and Paul Vallis began with those 1995 amendments. That's centralizing power in the board. That's what this court said in land. And it is a complete misstatement of the legislative history to tell this, what we regard as a fairy tale, about how everything was turned over to local principals. Aside from the fact, it would be a lot more honest if the board came up here and said, we're asking you to reverse land. Land settled this decision. Land's an excellent decision. We agree that there's a right to lay off employees who have permanent appointments, but that power is limited. These are permanent appointments, permanent in the dictionary sense. It's been permanent for the last 60, 70 years in the school code. It wasn't the union that put this in. There weren't any teacher unions then. Permanent as in the dictionary. Permanent by state law. Permanent must mean something more than day-to-day at-will employment. And they're coming up before the court and saying, why don't you give us an interpretation that turns it into day-to-day at-will employment? This court should not do that. And there's just no statutory text or anything, or even a citation from legislative history that says that they were getting rid of tenure, or that they were not centralizing power in the board when they put in the language that says, exclusive power to hire, discharge, layoff is vested solely in the board. The principal's role is entirely advisory, as this court said, in land. How can they make this argument in light of land? Unless they ask the court, reverse it. Our view, land should be upheld. POW should be upheld. The POW decision makes a big point about the difference between layoff and discharge. As Judge Corr said in the U.S. District Court, this isn't a semantic difference between layoff and discharge. It's a big difference. A layoff, as the court said in POW, discharge is a drastic, this is POW at page 80, discharge is a drastic, permanent action with far-reaching consequences. By contrast, a layoff, and that's the word we're using here, a layoff does not reflect unfavorably upon an employee. It is not ordinarily viewed as a permanent situation. And in this case, the court goes on to say, the very statute which authorizes such action requires preferential treatment as to reemployment. What was that statute? Section 8 of the Civil Service Code. The U.S. District Court said that statute closely resembles 1831. And it's true that the Civil Service Commission complied with the statute, and it's true, as the board says, that the board hasn't issued any rules under 1831, but that's coming up and saying we should be excused from complying with a recall procedure because we aren't complying with the law. Counsel, opposing counsel mentioned the Illinois Educational Labor Relations Act. Does that have any relevance here? No, and the union is not here as a collective bargaining institution. The argument is that Section 4.5 of the Illinois Education Labor Relations Act makes recall a bargainable subject. Well, we're the union, and we agree collective bargaining is fine. It's a great thing. But Section 10B of the Illinois Education Labor Relations Act makes clear that nothing that you do in collective bargaining can trump, can supersede, the parties for collective bargaining process shall not affect or implement a provision in a collective bargaining agreement if implementation would be in violation of or in conflict with any statute or statutes enacted by the General Assembly. And, you know, it's our view that there's no principle of law that requires the union to engage in bargaining to make the board comply with the school code or the constitutional rights of these teachers. That's what we're here representing, just their constitutional or their statutory rights under the school code. I see my time is up, and I just wanted to conclude by saying that, you know, our view of this is that the recall procedure is part of the substantive right to a permanent appointment. That goes back to Hankinson and other cases. And under 1831, the substantive right to recall is there, and it uses all sorts of mandatory criteria that we should take seriously until the recall poll is exhausted. It's wrong not to do this, and what's going on right now in Chicago schools, the replacement of tenure teachers with new hires off the street, rookies who've never been in a class, we should not be doing that to our children. Thank you. Thank you, Mr. Gagin. Thank you. As I'm sure you expect, on behalf of the Board of Education, we have to strenuously object to the characterization of the new teachers that are being brought into Chicago public schools because we could not disagree more strongly on the merit of the teachers. Regardless, though, that's not the issue before this Court because this case came to the Court on certified questions, and the first certified question is, do tenure teachers have a right to be rehired under either 3484 or 341831 after an economic reduction in force? I understood my opposing counsel to say during his argument they did not have a right to be rehired, which I believe answers the Seventh Circuit question. Now, he said that was the wrong question, that the question is whether or not they have a right to recall. And recall, frankly, has not been used in this case consistent with the term that recall is, which means the individual has a right to be called back to a vacant position. That is a recall right. Article 24 of the school code, which applies to every other school district, specifically says laid-off teachers have a right to be recalled to vacancies. There is no such provision in Article 34. That was removed from the statute. And although counsel says Article 34 implies a right to be recalled, the exact contrary is what it says. Article 3484 is what defines tenure and says what tenure means, what the General Assembly intends tenure to mean. And there they say vacancies are filled in accordance with 8.1, which specifically is merit and ability without regard to seniority or length of service. To say from that that tenure teachers have a statutory mandate to recall is simply specious. You cannot, from looking at that plain language, find a right to a vacancy. It's directly contrary to what the General Assembly intended as part of the school reform. I disagree very strenuously as well as to the characterization of the legislative history, but we've covered that extensively in our briefs and I'll rely on our brief for that. But the principals are accountable to their local school council. The local school council elects a principal or re-elects them to the position every four years. They are responsible for the educational plan and outcomes of their building. To do so, they need to be able to select the staff they believe appropriate in their school, which is why the General Assembly did not create a blanket right to recall into the schools because that would vitiate the principal's right to select their staff. And Article 24, which does have a right to recall, has no principal selection in the process. If you are the most senior teacher, you get the open position, regardless of which school it is. There is not the principal selection. Here, the General Assembly, listening to the grassroots efforts, the community organization, said we want principals to have that right to choose and gave it to the principals. I also want to point out, back to the description of the Powell v. Jones case, in that case, the teachers had a right to layoff. It wasn't implied, it was there. It said in the personnel code that they had a right to be recalled after a layoff, which is different than our case where we have the enabling statute that allows the board to implement a recall, does not mandate a recall. I also want to point out, throughout this litigation in the lower court and the Court of Appeals, the CTU, Chicago Teachers Union, has repeatedly stated that the teachers have no right to a vacant position, that they simply have a right to an interview for a vacant position. I believe they've changed their position in this case to try and claim a right to the vacancy itself. That is not something that they previously have said statutorily was required because it's not statutorily required. Then going back to Your Honor's question about Section 4.5, we are not saying that that 4.5 somehow overrides an obligation from 1831. Again, 1831 is an enabling statute. It does not require the board to have a recall right to recall employees back to a position. The union could have negotiated for that if they wanted to, not that the board had to agree to it, but they could have proposed that. They chose not to do so and instead pursued this avenue of litigation. Finally, this Court's decision in land versus Board of Education, I do think it's very much on point, and I think that what we're asking for in this case is consistent with this Court's decision in land. In land, the employees who were laid off had no recall rights. They went to a reassignment pool. They were notified that their positions were eliminated. They went into a reassignment pool where for ten months they were able to work in interim positions. None of them attained another position within the Chicago public school system, were notified of their honorable termination or laid off, and their employment with the school district ended. They did not have a recall right. The Board of Ed has never had a recall right for those tenured teachers. Subsequent to the legislative amendment. So this case actually is very much on point with this Court's decision in land. Unless this Court has other questions, I believe that's my rebuttal. Thank you very much. Case number 112-566, Chicago Teachers Union, Plaintiff Appellee versus the Board of Education of the City of Chicago. Defendant's appellant is taken under advisement as agenda number 13. This concludes our public call of the docket for the November term in 2011. Mr. Marshall, the Illinois Supreme Court stands adjourned.